*NOT FOR PUBLICATION

UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF NEW JERSEY

_____

| | |
|---|---|
| ROBERT McCLAIN, | |
|                 Petitioner, | Civil Action No. 12-2205 (FLW) |
|                 v. | **OPINION** |
| UNITED STATES OF AMERICA, | |
|                 Respondent. | |

_____

**WOLFSON**, United State Judge:

    Before the Court is Petitioner Robert McClain's ("Petitioner") pro se petition, filed pursuant to 28 U.S.C. § 2255, seeking to vacate, set aside, or correct his sentence. Petitioner was duly advised of his rights under United States v. Miller, 197 F. 3d 644 (3d Cir. 1999). See Miller Order, Dkt. No. 2. Respondent then answered, and Petitioner traversed. For the reasons detailed below, the Petition will be denied, and no certificate of appealability will issue.

**I.    Background**

    The parties do not appear to dispute the facts underlying Petitioner's conviction and the procedural developments of his criminal prosecutions; therefore, a brief summary shall suffice.

    The first incident underlying Petitioner's conviction took place on November 10, 2004, when an undercover police detective purchased from Petitioner a half ounce of crack cocaine. During that transaction, Petitioner walked to a purple 1995 Chevy Cavalier parked nearby and, upon retrieving a chunk of crack cocaine, broke off a half ounce and sold it the detective. The next

incident took place on December 3, 2004, when Petitioner, while driving the same purple Chevy Cavalier, was stopped by a patrol officer who had learned that the vehicle's registered owner had a suspended driver's license and an active arrest warrant. After Petitioner was ordered to stop, he exited the vehicle, locked the car keys inside and refused to get back into the car. During the pat-down of Petitioner, the officer discovered a bag with 5.173 grams of crack cocaine in Petitioner's jacket. This prompted the police to seek and obtain a search warrant of Petitioner's apartment and the Chevy Cavalier. The search of the apartment, for which Petitioner was present, yielded 2.6 grams of crack cocaine, a .380 caliber bullet and $800 in cash. The search of the vehicle produced 101.2 grams of crack cocaine, an operable, loaded, and ready-to-fire .380 caliber automatic pistol, .380 caliber ammunition, and several personal documents.

Petitioner executed a knowing and informed written waiver of his Miranda rights and admitted possession of both the crack cocaine and the weapon; in addition, he stated that: (a) he obtained the crack cocaine from two "suppliers," and (b) he purchased the weapon for "protection" after being robbed of $1,200. However, the person from whom Petitioner claimed he purchased the weapon had reported it stolen; the weapon's identification number was partially obliterated.

On August 1, 2005, Petitioner was charged with possession of cocaine base with intent to distribute, a crime carrying a term of imprisonment of 10 years to life. His first indictment, based solely on the controlled-substance offences, was returned on January 4, 2006; his superseding indictment, which added the felon-in-possession-of-firearm charge, followed six weeks later, on February 22, 2006. See U.S. v. McClain, Crim. Action No. 06-0008. Extensive pre-trial motion practice ensued, followed by a three-day trial. Petitioner was convicted on September 29, 2006, and sentenced on March 6, 2007, to a total of 151 months. On May 19, 2009, following amendments

to the crack-cocaine Sentencing Guidelines, he was retroactively re-sentenced to a total of 180 months, and on July 27, 2011, the Court of Appeals affirmed his sentence.

### II.   Petitioner's Challenges and Respondent's Position

At the heart of the Petition lies Petitioner's claim that defense counsel "fail[ed] to inquire from, or negotiate with, the [G]overnment regarding a plea agreement for [Petitioner]," which Petitioner believes " would have resulted in a substantially lower sentence than the one [Petitioner] received after being found guilty at trial."[1]  Petition, 4.  Derivative from this core challenge are two other claims.  In the first claim, Petitioner asserts that his counsel did not "properly explain [to him] the ramifications of proceeding to trial," id. at 5, in that defense counsel insufficiently explained the obligations associated with a criminal defendant's opportunity "to plead guilty and/or cooperate with the [G]overnment."  Traverse, Dkt. No. 10, at 3.  Petitioner maintains that this lack of explication caused him to presume that he had to cooperate with the Government as a prerequisite to a plea deal – e.g., wear a "wire" and tape his conversations with the persons the Government was interested in prosecuting.  According to Petitioner, this understanding of a prerequisite to a plea deal prevented him from urging defense counsel to seek a plea offer.  See Id. at 3; Petition, 4-5, 10-11.  In the second claim, Petitioner maintains that, had he been better counseled by his attorney on the potential benefits of a plea, Petitioner might have either expressed an interest in a plea prior to the entry of his superseding indictment (which added the weapon offense charge) or, alternatively, might later have

---

[1] At no point did Petitioner assert that an actual plea offer was made to him, and the record presently before this Court, as well as the record accumulated in Petitioner's underlying criminal proceeding, does not indicate that such offer was ever made.

negotiated a plea deal providing for withdrawal of his weapon offense charge.[2]  See id.  In addition, Petitioner asserts that defense counsel violated his rights by insufficiently challenging the evidence related to the weapon charge.  See Petition, 4, 16.  Petitioner maintains that, when the Court found certain relevant evidence admissible in connection with the weapon charge, defense counsel was then obligated to seek a plea offer and, further, to challenge the sufficiency of evidence more aggressively.[3]

Respondent maintains that defense counsel provided constitutionally sufficient assistance.  See Gov't Answer, Dkt. No. 9, at 9-15; see also Affidavit of Michael N. Huff, Esq. (defense counsel), Dkt. No. 9, Ex. 1 at ¶ 4(affirming that "I reviewed with [Defendant] the charges he faced, the sentencing ramifications of a plea to those charges, and the burden on the Government to prove each and every element of each charge beyond a reasonable doubt").  Respondent also maintains that defense counsel sufficiently challenged the evidence related to the weapon offense, as well as the controlled-substance offenses charged in both the first and second indictments.  Petitioner's traverse urges this Court to deem defense counsel's affidavit, relied upon by Respondent, "a 'CYA' statement, self serving at best, and amounting to fraud at worst."  Traverse, Dkt. No. 10, at 2.  Petitioner attached to the traverse his own affidavit reiterating his position that his defense attorney

---

[2]Petitioner relies on United States v. Mitchell, 2011 U.S. Dist. LEXIS 56456 (E.D. Pa. May 26, 2011), for his argument that defense counsel was obligated to explore a plea deal with the Government.

[3]Petitioner also alleges that his rights were violated because his counsel failed to maintain sufficient contact with Petitioner.  In support of this claim, Petitioner attached to his Petition the transcript of his pre-sentencing conference during which he asserted that his counsel was not communicating to him *after* the trial.  This claim is discussed in more detail infra, footnote 7.

never counseled him of "potential plea negotiations" and "at no time did he explain the 'pros' and 'cons' of entering a guilty plea." Id.; see also id., Ex. (Affidavit of Petitioner).

### III. Standard of Review and Governing Legal Principles

Section 2255 provides, in relevant part:

> A prisoner in custody under sentence of a court established by Act of Congress claiming the right to be released upon the ground that the sentence was imposed in violation of the Constitution or laws of the United States, or that the court was without jurisdiction to impose such sentence, or that the sentence was in excess of the maximum authorized by law, or is otherwise subject to collateral attack, may move the court which imposed the sentence to vacate, set aside or correct the sentence.

28 U.S.C. § 2255(a).

The Supreme Court of the United States has held that a challenge based on ineffective assistance of counsel prevails only when a petitioner demonstrates that (a) counsel's performance was deficient and (b) this deficiency prejudiced the defendant. See Strickland v. Washington, 466 U.S. 668, 688-89 (1984). The first prong – deficiency – requires a petitioner to demonstrate that "counsel's representation fell below an objective standard of reasonableness" by comparing counsel's challenged actions to prevailing professional norms, with deference given to counsel's strategic discretion. See id. at 688. There is a "a strong presumption that counsel's conduct falls within the wide range of reasonable professional assistance." Id. at 689. A challenger "must overcome the presumption that, under the circumstances, the challenged action might be sound trial strategy." Id. Significantly, effective assistance of counsel does not require an action "'that is effective in whatever way, and to whatever extent, the defense might wish.'" Rolan v. Coleman, 680 F.3d 311, 327 (3d Cir. 2012) (quoting Delaware v. Fensterer, 474 U.S. 15, 20 (1985) (per curiam)). To satisfy the second prong – prejudice – the defendant must show that "there is a reasonable

probability that, absent the errors, the fact finder would have had a reasonable doubt respecting guilt." Id. at 695.  As the Supreme Court explained,

> [i]n making this determination, a court hearing an ineffectiveness claim must consider the totality of the evidence before the judge or jury.  Some of the factual findings will have been unaffected by the errors, and factual findings that were affected will have been affected in different ways.  Some errors will have had a pervasive effect on the inferences to be drawn from the evidence, altering the entire evidentiary picture, and some will have had an isolated, trivial effect. Moreover, a verdict or conclusion only weakly supported by the record is more likely to have been affected by errors than one with overwhelming record support. Taking the unaffected findings as a given, and taking due account of the effect of the errors on the remaining findings, a court making the prejudice inquiry must ask if the defendant has met the burden of showing that the decision reached would reasonably likely have been different absent the errors.

Strickland, 466 U.S. at 695-96.

### IV.  Discussion

As noted supra, the majority of Petitioner's challenges turn on Petitioner's position that his counsel had a constitutional duty to: (a) seek a plea offer from the Government; and (b) detail more clearly the benefits and obligations Petitioner would have faced had a plea offer been made and accepted.  This position, however, is without support.  Neither the Sixth Amendment or any relevant case law sets forth an obligation for defense counsel to *seek* a plea offer or to counsel his/her client of the benefits and obligations of a *hypothetical* offer.[4]

---

[4] This requires additional discussion in light of two recent Supreme Court decisions. While a defense counsel is obligated to convey a plea offer and discuss with his client the consequences of accepting such offer or declining it, these obligations attach only to the offers actually made.  See, e.g., Lafler v. Cooper, 132 S. Ct. 1376 (2012) (the fact that a petitioner received a fair trial did not preclude prejudice from counsel's erroneous legal advice which caused the petitioner to reject an actually made plea offer); Missouri v. Frye, 132 S. Ct. 1399 (2012) (petitioner was denied effective assistance when counsel failed to inform him of a plea offer actually made).
  Indeed, in Lafler, the Supreme Court made clear that there can be *no* ineffective

    Indeed, as a district court in the Southern District of California succinctly summarized:

> The United States Supreme Court has long recognized that "there is no constitutional right to plea bargain; the prosecutor need not do so if he prefers to go to trial." Weatherford v. Bursey, 429 U.S. 545, 561 (1977); United States v. Osif, 789 F.2d 1404, 1405 (9th Cir. 1986) ("a defendant does not have a constitutional right to a plea bargain"). Defendant cites no authority that a defense attorney has a duty to initiate plea negotiations. This court could not locate any authority obligating defense counsel to seek a plea agreement on the defendant's behalf. See e.g., Welch v. United States, 370 F. App'x 739 (7th Cir. 2010) ("It is well-established . . . that counsel does not have an absolute obligation to pursue plea negotiations in every case"); United States v. Huddy, 184 F. App'x 765, 767 (10th Cir. 2006) (rejecting the defendant's argument that her counsel was ineffective for failing to initiate plea negotiations); United States v. Cabaccang, 2010 U.S. Dist. LEXIS 75813 (D. Guam, July 28, 2010) ("Because trial counsel was under no duty to initiate plea negotiations, he was not required to request a plea agreement from the Government prosecutor").

United States v. Alvarado, 2011 U.S. Dist. LEXIS 58682, at *11-*12 (S.D. Cal. June 1, 2011) (dismissing § 2255 challenges analogous to those at bar and pointing out the petitioner's error in relying on the case law addressing the circumstances where an actual plea offer was made); see also United States v. Ramos-Marrufo, 2012 U.S. Dist. LEXIS 150075, at *17 (E.D. La. Oct. 17, 2012)

---

assistance of counsel claim under Strickland if there is no actual plea offer. Lafler, 132 S. Ct. at 1387 (stating that defendants have "no right to be offered a plea . . . nor a federal right that the judge accept it"); id. ("[I]f no plea offer is made, or a plea deal is accepted by the defendant but rejected by the judge, the issue raised here [of ineffective assistance of counsel] simply does not arise."); see also United States v. Martinez, 2012 WL 4458385, slip op. at *2 (10th Cir. Sept. 27, 2012) ("But there was no plea offer made here, and there's no right to a plea offer. Lafler, 132 S.Ct. at 1387."); Ortega v. United States, 09 CIV. 608 LTS GWG, 2012 WL 2478277 (S.D.N.Y. June 27, 2012) report and recommendation adopted, 09 CIV. 608 LTS GWG, 2013 WL 81330 (S.D.N.Y. Jan. 8, 2013) ("*If* a plea bargain has been offered, a defendant has the right to effective assistance of counsel in considering whether to accept it. Lafler, 132 S.Ct. at 1387." (Emphasis added.)). I note that the Supreme Court recently granted certiorari in Burt v. Titlow, 12-414, Feb. 25, 2012, on appeal from the Sixth Circuit in Titlow v. Burt, 680 F.3d 557 (6th Cir. 2012), on the issue of whether "a convicted defendant's subjective testimony that he would have accepted a plea but for ineffective assistance, standing alone, [is] sufficient to demonstrate a reasonable probability that he would have accepted the plea." That case is distinguishable from Petitioner's in that a plea *was actually offered* to the defendant in Burt, but the defendant rejected it on the basis of allegedly incomplete and poorly formed advice from counsel.

("To show that he was prejudiced by his attorney's failure to initiate plea negotiations, [the petitioner] must do more than speculate about potential benefits that he was denied; he must provide concrete evidence that a favorable plea offer would have been available to him"); United States v. Cabaccang, 2010 U.S. Dist. LEXIS 86163, at *37 (D. Guam Aug. 23, 2010) ("The Petitioner cites no authority that a defense attorney has a duty to initiate plea negotiations. Federal circuits have not found that such duty exists.").

Accordingly, Petitioner's challenges arising from his belief that counsel had a constitutional duty to seek a plea deal and/or to counsel Petitioner on the benefits and obligations of a hypothetical plea offer are without merit. That Petitioner's counsel did not seek a plea deal and did not discuss with Petitioner any aspects of a hypothetical plea deal does not constitute deficient performance under Strickland.[5] In addition, Petitioner's related claims – e.g., that, had a plea been offered, he might have taken that plea prior to the entry of his second indictment or he might have tried to negotiate withdrawal of the weapon offense charge – are mere speculation and, as such, cannot demonstrate counsel's deficient performance under Strickland. See, e.g., Palmer v. Hendricks, 592 F.3d 386, 397-98 (3d Cir. 2010) (speculation insufficient to demonstrate deficiency). Thus, these claims are dismissed.

Two claims then remain: first, that defense counsel insufficiently attacked the evidence proffered by the Government in support of the weapon offense charge (added in the second indictment), and second, that defense counsel was ineffective because his communications with

---

[5] In that regard, Petitioner's reliance on Mitchell, 2011 U.S. Dist. LEXIS 56456, is misplaced because the facts are inapposite. In Mitchell, the United States District Court for the Eastern District of Pennsylvania addressed a scenario where the petitioner *actually received and entered* a plea of guilty.

8

Petitioner – specifically, as to a hypothetical plea deal – were less than what Petitioner would have preferred.  Neither of these claims warrants habeas relief.

As Respondent correctly points out, defense counsel extensively and consistently attacked the evidence related to the weapon offense.  Petitioner's claim to the contrary is unsupported by the record, and thus Petitioner cannot show any deficiency as required by the first prong of Strickland.[6]  Indeed, Petitioner's argument in this regard is not so much a complaint that he is innocent, but rather that defense counsel was not "good enough" to prevent Petitioner from being convicted.  This is not a basis for a claim under Strickland.  See, e.g., United States v. Agboola, 2006 U.S. Dist. LEXIS 62302, at *33-34 (D. Minn. Aug. 30, 2006) ("Although [Petitioner] has styled this ground for relief as an ineffective assistance of counsel claim, it appears his counsel was 'ineffective' only in that the [jury] did not agree with counsel's argument") (citing United States v. Dall, 957 F.2d 571, 572 (8th Cir. 1992), and United States v. Shabazz, 657 F.2d 189, 190 (8th Cir. 1981)); United States v. Stevens, 2002 U.S. Dist. LEXIS 17897, at *8 (E.D. Pa. Sept. 19, 2002) ("Petitioner is not entitled to claim ineffective assistance of counsel merely because he lost"); Sawyer v. State, 1985 Ark. LEXIS 1820, at *2 (Ark. Feb. 25, 1985) ("The suggestion that counsel could not have been effective merely because petitioner had [eventually] lost confidence in hi[s counsel] is meritless").  In other words, "[t]here is no [basis for a conclusion] that counsel was ineffective simply because he lost the case; quite possibly it was lost on its merits." Commonwealth v. Harris, 418 A.2d 589, 593 (Pa. 1980).

---

[6] For example, Petitioner's defense counsel: (a) attacked the search warrant pre-trial; (b) sought bifurcation of the controlled-substance and weapon-offence charges; (c) moved for judgment of acquittal on the basis of insufficiency of evidence; (d) argued the insufficiency of evidence during his summation; and (e) conducted cross-examination in this regard.

Moreover, Petitioner presented an insufficiency of the evidence argument on direct appeal, which the Court of Appeals found to be meritless. Petitioner therefore cannot show prejudice under the second prong of Strickland, regardless of whether defense counsel's strategic choices were somehow deficient under the first prong. Indeed, the evidence against Petitioner was substantial for all charges, including the weapon charge. See USA v. McClain, Crim. Action No. 06-0008, Dkt. No. 60, at 6 (Third Circuit Opinion affirming conviction) ("We find that the evidence was more than sufficient to support McClain's conviction for possession of a firearm in furtherance of a drug trafficking felony.").

Lastly, Petitioner asserts that counsel was ineffective because of the lack of discussion relating to a hypothetical plea. This claim merits no habeas relief. First, as I have already explained, counsel was not obligated to hold any such discussions in the absence of an actual plea offer. More generally, a generic statement that communications with counsel were insufficient fails under Strickland. A habeas petitioner cannot establish ineffective assistance of counsel by "assert[ing] . . . a mechanical calculation of alleged meetings and then, self-servingly, declare[ing] the amount of such alleged meetings insufficient." Cox v. Ricci, 2010 U.S. Dist. LEXIS 115711, at *15-16 (D.N.J. Oct. 29, 2010); accord Layne v. Moore, 90 F. App'x 418 (3d Cir. 2004) (affirming dismissal of habeas challenge asserting that trial counsel was ineffective because counsel met with the petitioner only three times prior to trial); Brownlee v. Haley, 306 F.3d 1043 (11th Cir. 2002) (denying habeas relief for claim that trial counsel met with the petitioner only two times for 10 to 15 minutes each). Here, there is no indication that defense counsel failed to meaningfully communicate with

10

Petitioner.[7]  Where "Petitioner maintains that his counsel spent insufficient time meeting with Petitioner and/or discussing the strategy of the case [but the] transcript of Petitioner's trial shows that Petitioner's counsel was well-aware of key aspects and minute details of Petitioner's case and consistently and ardently presented Petitioner's position . . . throughout every stage of the trial, . . . . Petitioner's disappointment with the amount of time he spent communicating with his defense attorney fails to establish that his counsel did not function as a meaningful adversary to the State." Gambino v. Warden of N.J. State Prison, 2013 U.S. Dist. LEXIS 52, at *40-41 (D.N.J. Jan. 2, 2013). Accordingly, these claims also do not merit § 2255 relief.

**V.     Certificate of Appealability**

The Court must now determine whether a certificate of appealability should issue. See Third Circuit Local Appellate Rule 22.2. "A [certificate of appealability] will issue only if the requirements of [28 U.S.C. § 2253] have been satisfied." Miller-El v. Cockrell, 537 U.S. 322, 336 (2003). Section 2253 "permits the issuance of a [certificate of appealability] only where a petitioner has made a 'substantial showing of the denial of a constitutional right.'" Id. "The [certificate of

---

[7]As noted previously, Petitioner attached to his Petition the transcript of his pre-sentencing conference during which he asserted that his counsel was not communicating to him *after* the trial.  However, the transcript Petitioner attached reveals that counsel's lack of post-verdict/pre-sentencing communications resulted from a post-verdict lull, when counsel was waiting for Petitioner's pre-sentence report and had little duties to perform, and not for any other reason.  Petitioner also apparently misconstrued a statement made by trial counsel as conceding ineffective assistance.  See Petition, 3-4.  Defense counsel in fact only stated that Petitioner had a right to seek an ineffective assistance claim, not that counsel's performance had been defective.  Id. at 4. This misunderstanding was sorted out to the Court's satisfaction during a pre-sentencing conference, although – during that conference – Petitioner requested another counsel to represent him at the sentencing stage.  See id. at 5-6 and 10.  The Court granted Petitioner's request, based solely on a breakdown in the attorney-client relationship, and not because the Court perceived that defense counsel's performance or attitude toward Petitioner were deficient.  See id. at 10.

appealability] determination under § 2253(c) requires an overview of the claims in the habeas petition and a general assessment of their merits." Id.  Here, no certificate of appealability will be issued because Petitioner failed to make "a substantial showing of the denial of a constitutional right."

**VI.     Conclusion**

For the foregoing reasons, the Court denies Petitioner's § 2255 motion.  No certificate of appealability will issue.  An appropriate Order accompanies this Opinion.


Dated: March 19, 2013                               /s/ Freda L. Wolfson
                                                                              **Freda L. Wolfson, U.S.D.J.**